**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| INNOVATIVE LOGISTICS | ) | Chapter 7 |
| TECHNIQUES, INC., et al | ) | Case No. 14-10053-BFK |
| | ) | <u>Jointly Administered</u> |
| Debtor. | ) | |
| | ) | |
| | ) | |
| KLINETTE KINDRED, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. 15-01178-BFK |
| v. | ) | |
| | ) | |
| ROBERT GUMBINNER and | ) | |
| FREDRIC GUMBINNER, Trustees under the | ) | |
| KAY M. GUMBINNER LIVING TRUST, or their | ) | |
| Successors in trust, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION AND
ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on the Motion to Dismiss the Plaintiff's Complaint, or in the Alternative for Summary Judgment, filed by Defendant Kay M. Gumbinner Living Trust and its Trustees Robert Gumbinner and Fredric Gumbinner (hereinafter, collectively, "the Defendant"). Dkt. No. 8. Klinette H. Kindred, Chapter 7 Trustee of the bankruptcy estate of Innovative Logistics Techniques, Inc. (hereinafter, "the Plaintiff"), filed an Opposition to the Motion. Dkt. No. 12. The Defendant filed a Reply Memo Dkt. No. 13. The Court heard the arguments of the parties on March 8, 2016, after which the Court entered an Order requiring the filing of supplemental briefs on the issue of equitable tolling. The parties filed their supplemental

briefs on May 10, 2016. Dkt. Nos. 23, 24. For the reasons stated below, the Motion will be denied.

## Undisputed Facts

The Court finds that the following facts are not genuinely disputed:

A.  *The Kay M. Gumbinner Living Trust.*

1. On February 19, 2002, Kay M. Gumbinner, as the settlor, executed a document entitled the Kay M. Gumbinner Living Trust (hereinafter, "the Trust Agreement"). Reply Memo Dkt. No. 13, Ex. A, Living Trust, Art. 1, § 1. Ms. Gumbinner named herself, her husband, Robert Gumbinner, and their son, Fredric Robert Gumbinner, as the Trustees. *Id*. The Trust Agreement created a revocable living trust for the well-being of Ms. Gumbinner and her loved ones. *Id*. For purposes hereof, the Trust initially created in the Trust Agreement will be referred to as "*the Living Trust*"

2. The Trust Agreement provides in part:

> My trust is a revocable living trust that contains my instructions for my own well-being and that of my loved ones. All references to "my trust" or "trust," unless otherwise stated, shall refer to this Living Trust and the trusts created in it. All references to "Trustee" shall refer to my initial Trustee or Trustees, or their successor or successors in trust.

*Id*.

3. The Trust Agreement states: "For convenience, my trust shall be known as the: KAY M. GUMBINNER LIVING TRUST, dated February 19, 2002." *Id*. Art. I, §2.

4. Upon Ms. Gumbinner's death, the Trust Agreement provides that "my trust shall become irrevocable, and my Trustee shall administer all trust property under the terms of this Article [Article Six]." *Id.* Art. VI, Sec. 1. The same section then states that, upon Ms. Gumbinner's death, her Trust may be referred to as an "Administrative Trust," with a separate

2

taxpayer identification number. *Id*. Art. VI, §1(a). The Administrative Trust was to terminate when all of the trust property was distributed in accordance with the terms of the Living Trust. *Id*. Art. VI, § 1(b).

5. The Trust Agreement further provides that, in the event that Ms. Gumbinner predeceased her spouse, the trust property was to be divided into two separate trusts, a Marital Trust and a Family Trust. *Id.* Art. VIII, § 1.

B. *The Establishment of the Family Trust (known as the KMG Trust).*

6. Ms. Gumbinner passed away on December 26, 2007, pre-deceasing her husband. Gumbinner Decl. ¶ 6, Dkt. No. 8-2. Shortly thereafter, on or about January 9, 2008, the Family Trust contemplated by Article VIII of the Trust Agreement was established, under the name the "Kay M. Gumbinner Trust." *Id.* ¶ 7. For purposes hereof, the Family Trust will be referred to as the "*KMG Trust.*"

7. Certain property of the Living Trust was transferred to the KMG Trust, pursuant to the terms of the Trust Agreement. *Id.* ¶ 9. The KMG Trust opened its own bank accounts using its own tax identification number. *Id.* ¶ 8. These accounts were separate and distinct from the accounts used by the Living Trust.

C. *The KMG Trust Loans to the Debtor.*

8. In late 2009 and 2010, the KMG Trust made a number of loans to the Debtor, represented by a series of promissory notes. *Id.* ¶ 10.[1]

9. The Promissory Notes are made payable to "the Kay M. Gumbinner Trust ('Holder')." *Id.* Ex. D.

---

[1] The Plaintiff alleges that these loans were made over the period from September 15, 2010 through February 6, 2014. Compl. ¶ 13, Docket No. 1,.

10. Certain Guaranties and Indemnity Agreements executed in connection with the Notes identify the "Kay M. Gumbinner Trust" as the Lender. *Id.*

11. Fredric Gumbinner's Declaration states that the Living Trust did not receive any transfers from the Debtor, a statement that the Plaintiff does not contradict. (*Id.* ¶ 10.)

   D. *The Run-Up to this Litigation.*

12. The Debtor, Innovative Logistics Techniques, Inc., filed a voluntary petition under Chapter 7 with the U.S. Bankruptcy Court for the District of Nevada on September 4, 2013. Case No. 14-10053-BFK, Dkt. No. 1 (Attach. # 3). The two-year statute of limitations for avoidance actions under the Bankruptcy Code, therefore, would have run on September 4, 2015, subject to the terms of the Tolling Agreement and the two Amendments to the Tolling Agreement, and the principle of equitable tolling, discussed below.

13. The Nevada Bankruptcy Court transferred the case to this Court on December 17, 2013. *Id.*, Attachment # 2. Ms. Kindred was appointed as the Chapter 7 Trustee upon receipt of the case from Nevada. *Id.*, Dkt. No. 3.

14. In response to a request from the Plaintiff's counsel, an attorney who was then representing the Gumbinner family, David Kaufman, provided the Plaintiff's counsel with a copy of the Trust Agreement on or about December 1, 2014. Kaufman Decl., ¶ 2.

15. On April 29, 2015, the Plaintiff's counsel, Steven Ramsdell, sent Mr. Kaufman an e-mail stating: "You have agreed to provide me the following: 1. The 1/9/08 KMG Trust document that is referenced in the notes attached to your proof of claim, together with an explanation as to how it varies from the 2002 Trust that you previously provided to me." Pl's Opp'n Motion Dismiss, Dkt. No. 12, Ex. 4.

16. Mr. Kaufman responded by e-mail dated May 4, 2015, as follows:

4

> I asked the KMG Trust's Trustee why the Notes referenced the Trust as they did. The answer I got is that the KMG Trust was originally a Revocable Trust and was created as part of an estate plan by Kay and Robert Gumbinner in 2002. They were generation-skipping Trusts as Fred Gumbinner was financially secure and did not require any assistance. *When Kay Gumbinner died her revocable Trust became irrevocable and acquired its own TIN in January 2008.* Apparently Richard Golden, Esq. (who prepared the original Confessions of Judgment for the KMG Trust Notes) recommended that the irrevocable Trust be referenced as you found.

*Id.* (emphasis added).

17. The parties entered into a Tolling Agreement and two Amendments to the Tolling Agreement. The Tolling Agreement and the two Amendments each identifies "the *Kay M. Gumbinner Living Trust* by and through Fred Gumbinner, Trustee under the Kay M. Gumbinner Living Trust" as the "Transferee" of the transfers in question. *Id*., Exs. 6, 9,11 (emphasis added).

18. The Second Amendment to the Tolling Agreement extended the time to file the Complaint through and including December 30, 2015. *Id*., Ex. 11.

*E. The Plaintiff's Complaint.*

19. The Plaintiff filed her Complaint in this adversary proceeding on December 29, 2015. Dkt. No. 1. The Plaintiff's Complaint seeks to avoid as preferences and fraudulent and/or voluntary conveyances a number of transfers that allegedly were made in repayment of the loans made by the KMG Trust. *See* Compl. ¶ 15., Dkt. No. 1

20. The Complaint identifies "Robert Gumbinner and Fred Gumbinner, Trustees under the Kay M. Gumbinner Living Trust, or their successors in trust," as the Defendants. *Id.,* p. 1 (style of adversary proceeding). Throughout her Complaint, however, the Plaintiff refers to the "KMG Trust" as the Defendant. *See id*. 1 ("the Kay M. Gumbinner Living Trust (the 'KMG Trust')", ¶¶ 13 ("various loans that KMG Trust made to the Debtor"), 15 ("the Debtor made the following payments to the KMG Trust").

5

**Conclusions of Law**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for the Eastern District of Virginia on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F) (proceedings to determine, avoid or recover preferences) and (H) (proceedings to determine, avoid or recover fraudulent conveyances).

The Defendant's Motion is a motion to dismiss under Bankruptcy Rule 7012 (incorporating Fed. R. Civ. P. 12(b)(6)) or in the alternative for summary judgment pursuant to Bankruptcy Rule 7056 (incorporating Fed. R. Civ. P. 56). Because the Defendant's Motion relies on facts outside of the Complaint, including the Declaration of Federic Gumbinner, the Court will treat the Motion as one for summary judgment pursuant to Rule 12(d).

Summary judgment is appropriate where there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056. The moving party has the initial burden of showing that there are no material facts in dispute, and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24 (1986). When the moving party has met its initial burden, the burden then shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986).

Whether a fact is material or not depends on the substantive law at issue in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.Rule Civ.Proc. 1." *Celotex Corp.,* 477 U.S. at 327.

The Defendant's Motion initially raised two issues: (1) whether the Living Trust is the same trust as the KMG Trust; and (2) if not, whether the KMG Trust is equitably estopped from opposing an amendment to the Complaint to add the KMG as a Defendant or from claiming the statute of limitations as an affirmative defense. Rather than analyzing the second issue under the doctrine of equitable estoppel, however, the Court finds it more appropriate to consider the issue under the closely related doctrine of equitable tolling. The issue of equitable tolling has been fully briefed, and the matter is ripe for a decision.

*1.  Is the Living Trust the Same Entity as the KMG Trust?*

The Plaintiff named the Living Trust ("or [its] successors in trust"), in the style of the Complaint. Throughout the Complaint, however, she refers to the "KMG Trust" as the recipient of the transfers. The Defendant argues that the Plaintiff has sued the wrong party – that she sued the Living Trust, when the KMG Trust was the creditor and the recipient of the transfers. The Plaintiff argues that she has sued the correct party. Pl's Opp., p. 2 ("By virtue of the Living Trust's own language, the Trustee has sued the correct party.") She argues that, according to the Trust Agreement, there is only one trust. *Id*. at 5-7.

The Court's guide here must be the intent of the grantor, Ms. Gumbinner. Lacking any contemporaneous statements from Ms. Gumbinner concerning the creation of the Trust Agreement, the Court can only look to the Trust Agreement itself for guidance. The Plaintiff first relies on Article I, Section 1, for the proposition that there is only one trust. Article I, Section 1,

7

states: "All references to 'my trust' or 'trust,' unless otherwise stated, shall refer to this Living Trust *and the trusts created in it.* All references to 'Trustee' shall refer to my initial Trustee or Trustees or their successor or successors in trust." Reply Memo, Ex. A, the Living Trust, Art. 1, § 1 (emphasis added).

Article VIII of the Trust Agreement, on the other hand, provides that, in the event that Ms. Gumbinner predeceased her husband, the trust property shall be distributed "into *two separate trusts*, to be known as the Marital Trust and the Family Trust." *Id*. Art. 8, § 8 (emphasis added). The Family Trust (now known as the KMG Trust) is established by Article X of the Trust Agreement. *See id*. Art. 10.

The Court finds that, notwithstanding the reference in Article I, Section 1, to "this Living Trust and the trusts created in it," the intent of the grantor was to create three separate trusts – the Living Trust, the Marital Trust and the Family Trust. The plain language and natural reading of Article VIII, Section 1 (Division of Trust Property) indicates that there would be "two separate trusts," the Marital Trust and the Family Trust. The terms of Article X establish the Family Trust. *See id*. Art. 8 & Art. 10.

Further, Article VI, Section 1, provides that, upon Ms. Gumbinner's death, the Living Trust becomes irrevocable and that the Trustees would distribute the assets of the Living Trust into the Marital Trust and the Family Trust using a separate taxpayer identification number (which would be required to separate the assets from the decedent's probate estate). *Id*. Art. 6, § 1. Article VI, Section 1(b) provides that the Administrative Trust terminates when all of the property has been distributed to the Marital Trust and the Family Trust in accordance with the terms of the Trust Agreement. *Id*. Art. 6, § 1(b). Article VI in the Trust Agreement directs the

Trustees to distribute the trust property to the Marital Trust and the Family Trust, and to provide for a termination of the Living Trust.

The Court finds, after a review of the relevant provisions of the Trust Agreement, that the Trust Agreement created a Living Trust and, upon the death of Ms. Gumbinner, a Marital Trust and a Family Trust were created, all of which were separate trusts, despite having been created in the same Trust Agreement.

*2. Is the Plaintiff Entitled to an Equitable Tolling of the Statute of Limitations?*

Equitable tolling is an extraordinary remedy that should be applied only sparingly. *Irwin v. Veterans Dep't of Admin.*, 498 U.S. 89, 96 (1990); *CVLR Performance Horses, Inc. v. Wynne,* 792 F.3d 469, 476 (4th Cir. 2015). To qualify for equitable tolling, the Plaintiff must demonstrate that: (1) she diligently pursued her rights; and (2) extraordinary circumstances prevented her from timely filing her claims. *CTS Corp. v. Weinberger*, 134 S. Ct. 2175, 2183 (2014); *Lozano v. Montoya Alvarez,* 134 S. Ct. 1224, 1232 (2014); *CVLR Performance Horses, Inc. v. Wynne,* 792 F.3d , at 476 (citing *Holland v. Florida,* 560 U.S. 631, 649 (2010)); *Kuusk v. Holder*, 732 F.3d 302 (4th Cir. 2013); *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000).

"It is well-settled that equitable tolling may be applied, in appropriate circumstances, to toll the statute of limitations imposed under 11 U.S.C. § 546(a)." *In re Randall's Island Family Golf Ctrs., Inc.,* 288 B.R. 701, 706 (Bankr. S.D.N.Y. 2003) (*citing Ernst & Young v. Matsumoto (In re United Ins. Mgmt., Inc.),* 14 F.3d 1380, 1385 (9th Cir. 1994) ("Equitable tolling is not 'fundamentally inconsistent' with § 546, which has no tolling provision itself and does not contain a distinct period of repose.")); *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.),* 408 F.3d 689, 699 (11th Cir. 2005) ("[Section 546 is]a statute of limitations, subject to waiver,

equitable tolling, and equitable estoppel"); *Schaechter v. Madeoy (In re Medeoy),* Civ. A. No. TDC-15-1821, 2016 WL 878333, at *1, *5 (D. Md. Mar. 8, 2016).

The Court finds that the Plaintiff has satisfied both of the requirements for equitable tolling. First, the Plaintiff exercised diligence in seeking production of the Living Trust Agreement from the Defendant's counsel. She followed up with an e-mail, requesting an explanation of the differences between the Trusts. She entered into a Tolling Agreement and two Amendments, all of which identified the Kay M. Gumbinner Living Trust as the transferee. She timely filed her Complaint against the party with whom she had contracted in the Tolling Agreement and its two Amendments.

Further, there are extraordinary circumstances here that prevented the Plaintiff from timely filing her claims. The Tolling Agreement and its two Amendments identified the "Kay M. Gumbinner Living Trust" as the "Transferee." The Defendant argues that Mr. Gumbinner, who signed the Tolling Agreement and its Amendments as Trustee, simply didn't see that these agreements named the Living Trust (which had terminated its existence in early 2008), and that the Living Trust had never been the lender to the Debtor and had never received any transfers from the Debtor. The Court, though, does not need to find an intentional misrepresentation on the part of the Defendant to find that extraordinary circumstances exist here. *In re Livemercial Aviation Holding, LLC,* 508 B.R. 58, 68 (Bankr. N.D. Ind. 2014) ("*[E]quitable tolling does not depend on an act of fraud, or negligent action, by a party against whom an action is asserted*") (emphasis in original); *In re Randall's Island Family Golf Ctrs., Inc.*, 288 B.R. at 706 ("[The application of equitable tolling] has not been limited to fraud, and has been applied to situations where, despite the exercise of due diligence, the trustee has not been able to file a timely proceeding.") In the May 4th e-mail exchange between counsel for the Plaintiff and counsel for

the Defendant, Defendant's then-counsel advised the Plaintiff's counsel that "[w]hen Kay Gumbinner died her revocable trust became irrevocable and acquired its own TIN in January 2008." Pl's Opp., Dkt. No. 12, Ex. 3. The Tolling Agreement and its two Amendments identified the Living Trust, not the KMG Trust, as the "Transferee."[2]

This is more than just an instance of "a garden variety claim of excusable neglect," as suggested by the Defendant. Def's Suppl. Mem., 8-9 (citing *Holland v. Florida*, 560 U.S. at 651-52 (2010)). Rather, in the Court's view, this is a paradigm case for the application of equitable tolling. The Tolling Agreement and its two Amendments, in identifying the Living Trust as the transferee, plainly indicate confusion on the part of the Defendant and its counsel as to the identity of the proper party. Further, Mr. Gumbinner signed all three documents as Trustee of the Living Trust, which was terminated years before he signed the Agreements.

Finally, the Court rejects the Defendant's argument that the Plaintiff has failed to show a causal nexus between the events that occurred in the months leading up to the filing of the Complaint and the Plaintiff's naming of the Living Trust as the Defendant. In the Defendant's view, the Plaintiff has "doubled down and tripled down" on her position that she named the correct party in the first place, thereby somehow precluding the Plaintiff from arguing in favor of equitable tolling. *Id.* at 8. The Plaintiff, though, is entitled to argue legal positions in the alternative. The Plaintiff's position that she named the correct party (which the Court has rejected, above) does not now prohibit her from arguing, in the alternative, that if she did not name the correct party equitable tolling should apply.

---

[2] Surprisingly, the Defendant now argues that the "May 4 Email is unreliable on its face . . . " Defendant's Supplemental Mem., p. 6. The Defendant's argument that *its own counsel's* e-mail is "unreliable on its face" seems to be an argument in favor of equitable tolling, not against it.

The Court finds that the Plaintiff exercised diligence in bringing her claims and that there are extraordinary circumstances warranting the equitable tolling of Section 546(a) in this case.

## Conclusion

For the foregoing reasons, it is **ORDERED**:

1. The Defendant's Motion for Summary Judgment is denied.

2. The Plaintiff shall file an Amended Complaint specifically identifying the KMG Trust as the Defendant within 14 days of the entry of this Order, for which the statute of limitations under Section 546(a) shall be deemed to be equitably tolled.

3. The clerk will mail copies of this Memorandum Opinion and Order, or will provide cm-ecf notice of its entry, to the parties below.

Date: May 31 2016  
Alexandria, Virginia

/s/ Brian F. Kenney  
Brian F. Kenney  
United States Bankruptcy Judge

Copies to:

Entered on Docket: May 31 2016

Steven B. Ramsdell, Esquire  
Tyler, Bartl, Ramsdell & Counts, P.L.C.  
300 N. Washington St., Suite 202  
Alexandria, VA 22314  
*Counsel for the Plaintiff, Klinette H. Kindred*

David William Gaffey, Esquire  
Whiteford Taylor & Preston, LLP  
3190 Fairview Park Drive, Suite 300  
Falls Church, VA 22042  
*Counsel for the Defendants*